**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTEN LOCKHART, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CRUMBL, LLC,<br><br>Defendant. | Case No. 3:24-cv-02607-VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: September 26, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Vince Chhabria |

## TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ... 1

LEGAL STANDARD ... 2

ARGUMENT ... 3

I. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 631 CLAIM ... 3

A. Plaintiff's Allegations Satisfy the Pleading Requirements of FRCP 8 ... 3

B. Plaintiff Sufficiently Alleges That Stripe Violated the Second Prong of Section 631(a) ... 4

C. Plaintiff Sufficiently Alleges That Stripe Violated the Third Prong of Section 631(a) ... 8

II. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 632 CLAIM ... 8

III. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ... 10

A. Plaintiff Had a Reasonable Expectation of Privacy ... 11

B. Defendant Committed a Serious Breach of Privacy ... 13

CONCLUSION ... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Armstrong v. Allied Ins. Co.*, 2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) .......... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Balletto v. Am. Honda Motor Co.*, 2024 WL 589090 (N.D. Cal. Feb. 13, 2024) .......... 5

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 10, 11

*Bunnell v. MPAA*, 567 F.Supp.2d 1148 (C.D. Cal. Aug. 22, 2007) .......... 8

*Chevron Corp. v. Donziger*, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .......... 14

*Cody v. Ring LLC*, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .......... 6, 7, 8

*D'Angelo v. FCA US, LLC*, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) .......... 5

*Doe v. FullStory, Inc.*, 2024 WL 188101 (N.D. Cal. Jan. 17, 2024) .......... 10

*Gonzales v. Uber Technologies, Inc.*, 305 F.Supp.3d 1078 (N.D. Cal. 2018) .......... 7

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 8, 9

*Griffith v. TikTok, Inc.*, 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) .......... 11

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 14

*Hernandez v. Path, Inc.*, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) .......... 7

*Humphrey v. J.M. Smucker Company*, 2023 WL 3592093 (N.D. Cal. May 22, 2023) .......... 3, 4

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ passim

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 10

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 13

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 14

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 15

*In re Google, Inc. Privacy Policy Litigation*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........ 16

*In re iPhone Application Litigation*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 10

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ........ 5, 10, 11

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F. Supp 3d 1204 (C.D. Cal. 2017) ........ 13

*India Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024) ........ 7

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 6

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 4

*Low v. LinkedIn Corp.,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 16

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 16

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 16

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........ 16

*Padron v. Lara*,
2018 WL 2213462 (E.D. Cal. May 11, 2018) ........ 13, 15

*Pioneer Elecs. (USA) Inc. v. Super. Ct.*,
40 Cal. 4th 360 (2007) ........ 14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 7, 8, 16

*Ribas v. Clark*,
696 P.2d 637 (1985) ........ 12

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 15

*Rogers v. Ulrich*,
125 Cal. Rptr. 306 (Cal. Ct. App. 1975) ........ 9

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ........ 16

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........ 8

*Silver v. Stripe Inc.*,
2021 WL 31917526 (N.D. Cal. July 28, 2021 ........ 14, 15

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) ........ 11

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) ........ 3

*Thomasson v. GC Services Ltd. P'ship*,
321 Fed. App'x. 557 (9th Cir. 2008) ........ 12

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) ........ 11

*United States v. DE L'Isle*,
825 F.3d 426 (8th Cir. 2016) ........ 14

*United States v. Hillaire*,
857 F.3d 128 (1st Cir. 2017) ........ 14

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 15

*Valenzuela v. Keurig Green Mtn., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 6, 7, 8

*Weiner v. ARS Nat. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012) .......... 12

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 8, 9

**STATUTES**

Cal. Penal Code § 631 .......... passim

Cal. Penal Code § 632 .......... 10, 11, 12

**RULES**

Fed. R. Civ. P. 8 .......... 4, 6

**INTRODUCTION**

California protects consumers by requiring private companies to disclose their data sharing practices when collecting sensitive, private information. Despite these requirements, Defendant Crumbl, LLC ("Defendant") fails to provide consumers with any notice regarding its data collection and sharing practices. The moment a consumer enters Defendant's website, Stripe software is embedded into their browsers to track and monitor their browsing and purchasing activity. The information intercepted by the Stripe.js code includes at least consumers' mouse movements and clicks, keystrokes, IP addresses, geolocation, credit card information, whether the consumer had sufficient funds for a transaction, and whether they later disputed a charge to their credit card. Compl. ¶¶ 37, 38, 43, 47 (ECF No. 1). At no point are consumers aware that Stripe is monitoring their online behavior or collecting personal financial information. That is by design. Defendant assists Stripe in intentionally mimicking its webpage to give the illusion that consumers are only communicating directly with Defendant. Even after consumers leave Defendant's website, the Stripe.js code continues monitoring their interactions with other merchants within the Stripe network. Stripe then leverages the personal and financial information collected to build consumer profiles, then monetizes their database of collected consumer information by marketing and selling its fraud prevention services to the other merchants.

Plaintiff Kristen Lockhart ("Plaintiff") has made several purchases on Defendant's website. During her interactions on Defendant's website, Plaintiff reasonably believed that she was only communicating with Defendant, and that Defendant would not disclose her private information to third parties. *Id.* ¶ 10. Unbeknownst to Plaintiff, Defendant had assisted Stripe in installing the Stripe.js software onto her browser the moment she entered Defendant's website. *Id.* ¶ 9. Stripe was then able to intercept and store several pieces of private information from Plaintiff, including personally identifiable information and financial information. *Id.* ¶ 10. Such disclosures violate California law.

After the filing of this lawsuit, Defendant attempted to correct its practices by adding certain disclosures on its website to inform consumers of these disclosures of personal and financial information. Nonetheless, Defendant still moves to dismiss the instant action, claiming

that Plaintiff has failed to state any claim under California law. Each of Defendant's arguments are without merit.

First, Defendant argues that Plaintiff fails to state a claim under Section 631 of the California Invasion of Privacy Act ("CIPA") because Plaintiff does not "allege Stripe intercepted a communication between Plaintiff and Crumbl 'in transit,'" and that Stripe was "operating as a mere extension of Crumbl, and therefore entitled to the party exception." ECF No. 12-1 at 8 ("Motion"). Both arguments fail. The Stripe.js code installed on consumers' browsers allows Stripe to "surreptitiously intercept sensitive information." Compl. ¶ 43. This includes the information entered on Defendant's website by Plaintiff. *Id.* ¶¶ 9-10. Such pleadings are sufficient to establish that a communication was intercepted "in transit" under California law. Stripe is also not entitled to the "party exception," because it was utilizing and monetizing the information intercepted from the Crumbl website for its own purposes outside of the services being provided to Defendant. *Id.* ¶¶ 28, 33, 39, 40.

Next, Defendant argues that Plaintiff's claim under Section 632 of the CIPA fails because Section 632 only applies to conversations. Motion at 16-17. That is wrong. Courts have consistently found that Section 632 applies to "confidential communications," including disclosures of information similar to the information at issue here.

Finally, Defendant argues that Defendant's actions "did not invade on a reasonable expectation of privacy, and the type of action involved is not highly offensive." Motion at 8. The acts taken by Defendant and Stripe are far from routine commercial behavior. Consumers in California have a right to know who is receiving their sensitive personal and financial information and how it is being safe guarded.

For these reasons, and those discussed more thoroughly below, Defendant's Motion should be denied in its entirety.

## LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## ARGUMENT

### I. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 631 CLAIM

#### A. Plaintiff's Allegations Satisfy the Pleading Requirements of FRCP 8

Defendant argues that "Plaintiff's theory of liability under Section 631(a) should be dismissed under Rule 8" because Plaintiff has not "clearly identif[ied] which of the first three prongs Stripe violated to articulate an aiding and abetting claim under prong four." Motion at 11-12. That is wrong.

Rule 8(a)(2) requires only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Plaintiff alleges that "Defendant, when aiding and assisting Stripe's wiretapping and eavesdropping, intended to help Stripe learn some meaning of the content in the form field entered by Plaintiff and Class members" "without the authorization and consent of Plaintiff and Class Members[,]" and "while they were using a browser to visit www.crumblcookies.com." Compl. ¶¶ 66–68. Thus, Plaintiff adequately alleges that Defendant aided and abetted Stripe in violating clause two of § 631(a). *See D'Angelo*

*v. FCA US, LLC*, 2024 WL 1625771, at *9–12 (S.D. Cal. Mar. 28, 2024); *Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *2–3 (N.D. Cal. Feb. 13, 2024).

Plaintiff also alleges that Stripe uses and monetizes the communications that Defendant assists Stripe in intercepting for its fraud prevention services. Compl. ¶¶ 28, 33–34, 39–40, 66. Therefore, Plaintiff adequately alleges that Defendant aided and abetted Stripe in violating the third prong of § 631(a). *D'Angelo*, 2024 WL 1625771, at *11-12 (finding allegations that the defendant allowed a third party to secretly intercept chat communications in real time on its website supported a plausible claim under Section 631); *see also In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *6 (N.D. Cal. Mar. 25, 2024) ("[T]he allegations are not so indecipherable as to violate Rule 8."). Other than conclusory assertions, Defendant fails to provide any authority to support its position that such allegations are insufficient to provide "fair notice of what the claim is and the grounds upon which it rests." Motion at 11.

**B. Plaintiff Sufficiently Alleges That Stripe Violated the Second Prong of Section 631(a)[1]**

Defendant claims that it did not violate the second prong of Section 631(a) for two independent reasons. First, Defendant argues that "[d]irect transmissions between the sender and the recipient do not constitute 'interceptions.'" Motion at 13. Second, Defendant argues that even if an interception is established, Plaintiff's claim still fails because Stripe is a party to the underlying communication. *Id.* at 14. Defendant is wrong on both counts.

The second prong of Section 631(a) prohibits parties from:

> willfully and without consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state.

Cal. Pen. Code § 631(a).

Accordingly, the second prong of Section 631 has three independent requirements: (1) lack of consent of all parties to a communication; (2) eavesdropping by a third-party nonparticipant; and

[1] Plaintiff does not allege that Defendant violated the first prong of Section 631(a).

(3) interception of a communication while in transit. *See, e.g.*, *Valenzuela v. Keurig Green Mtn., Inc.*, 674 F. Supp. 3d 751, 756–58 (N.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081–84 (C.D. Cal. 2023). Defendant only disputes the fulfillment of the second and third requirements.

Plaintiff alleges sufficient facts that Stripe intercepted her communications "*while* the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." *Cody v. Ring LLC*, 2024 WL 735667, at *5 (N.D. Cal. Feb. 22, 2024) (citation omitted); *see, e.g.,* Compl. ¶ 31 ("When merchants, like Defendant, integrate the Stripe.js code onto their website, the code allows Stripe to intercept communications consumers reasonably believe will be sent directly to the merchant."); *Id.* ¶ 43 ("This code allows Stripe to surreptitiously intercept sensitive information, including a consumers' mouse movements and clicks, keystrokes, IP address, and geolocation."). In analyzing this element, courts focus on the timing aspect. *See Valenzuela*, 674 F. Supp. 3d at 758 ("'While' is the key word here."). Put simply, prospective plaintiffs must provide factual claims that interception occurred "contemporaneous" with transmission. *See, e.g.*, *Cody*, 2024 WL 735667, at *5; *India Price v. Carnival Corp.*, 2024 WL 221437, at *5 (S.D. Cal. Jan. 19, 2024).

Defendant claims no "in transit" interception occurred because "Plaintiff sent her information *directly to* Stripe," and therefore no communication could be "intercepted" within the meaning of Section 631(a). Motion at 14. Defendant improperly implies a *per se* rule that direct recipients of communications do not "intercept" such communications. This is not how California courts have interpreted the second prong of Section 631(a). *See, e.g., Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) ("Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication."). Plaintiff satisfies the "in transit" requirement of the second prong of Section 631(a) by alleging that Stripe code embedded on consumers browsers allows Stripe to "surreptitiously intercept sensitive information" from consumers as they navigate

Defendant's website. Compl. ¶ 43. The authority relied upon by Defendant addresses situations where third parties accessed data *after* it has already been stored. *See Hernandez v. Path, Inc.*, 2012 WL 5194120, at *1 (N.D. Cal. Oct. 19, 2012) (plaintiff failed to allege an "interception" occurred where the defendant "accessed the putative class members' mobile devices and uploaded to its servers the class members' [PII]…and shared this information with advertisers."); *Gonzales v. Uber Technologies, Inc.*, 305 F.Supp.3d 1078, 1087 (N.D. Cal. 2018) (finding no "interception" under the Federal Wiretap Act where the plaintiff "does not allege that Uber intercepted a communication from Plaintiff. Plaintiff alleges that his driver ID and geolocation information were sent to Lyft's servers. Lyft then took the information it received from Plaintiff and other nearby drivers and sent it to Uber (pretending to be an actual Lyft customer). Thus, the communication Uber acquired is a communication from Lyft and not Plaintiff[.]"); *Bunnell v. MPAA*, 567 F.Supp.2d 1148, 1153-54 (C.D. Cal. Aug. 22, 2007) (finding no "interception" where messages were stored on a server prior to being "copied and forwarded.").

Plaintiff also sufficiently alleges that Stripe is a third-party eavesdropper. Defendant contends that under the second prong of Section 631(a), "Stripe was a party to [Plaintiff's] purported communication." Motion at 16. According to Defendant, Stripe is not a third-party eavesdropper because Stripe is "an extension of Crumbl," merely providing Defendant Crumbl "a service as a tool." *Id.* at 14. Defendant contends that the "service" Stripe provides is "processing 'Personal Data.'" *Id.* at 15. This is both an incorrect interpretation of the party exception and an incorrect characterization of the services provided by Stripe.

Section 631(a) shields parties to a communication from liability. *See, e.g.*, *Valenzuela*, 674 F. Supp. 3d at 757; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021). However, "a vendor hired by a website may act as a third-party eavesdropper if they secretly record conversations in real time." *Cody*, 2024 WL 735667, at *6. In determining the party status of a website vendor, California courts look to see if the "usage of third-party recordation software can be considered equivalent to having hired a third-party in the first place for purposes of a Section 631(a) analysis."

*Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). A determining factor in deciding third-party status is whether the accused eavesdropper intercepted communications for self-use or, comparatively, simply recorded communications for future playback on behalf of one of the parties. *Compare Revitch*, 2019 WL 5485330, at *2 (Chhabria, J.) ("Facebook acquired user communications by causing their browsers to transmit parallel signals . . . that means of interception should not have stripped Facebook of its third-party status."), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself."). Finding of wrongdoing may require an examination into "whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently uses the gathered data in some way." *Williams*, 2022 WL 17869275, at *3.

Here, Plaintiff sufficiently alleges that Stripe is more than a processing "tool" for Defendant. Plaintiff repeatedly asserts that Stripe intercepts data for the purpose of "sell[ing] its risk assessment products to merchants for financial gain." Compl. ¶ 40. Plaintiff's intercepted data is aggregated with additional information, as Stripe monitors online activity after consumers exit Defendant's Website, "allowing Stripe to intercept more information as consumers make other online purchases." *Id.* ¶ 53. Such behavior is indicative of the impermissible self-serving behavior proscribed by California courts. *See, e.g.*, *Williams*, 2022 WL 17869275, at *3; *Graham*, 533 F. Supp. 3d at 832; *see also In re Facebook*, 956 F.3d at 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule."). Stripe is more akin to an unseen auditor rather than a recipient of recordings. *Compare Ribas v. Clark*, P. 2d 637, 642 (Cal. 1985) ("[T]o permit a third person to furtively listen to a conversation . . . would clearly contravene the objectives of section 631."), *with Rogers v. Ulrich*, 125 Cal. Rptr. 306, 308-09 (Cal. Ct. App. 1975) (declining to find that the "statute covers the recording of a conversation made by a participant.").

Defendant's argument that "Stripe promises to not 'sell' or 'lease' any 'Personal Data' it receives from Crumbl to any third party" misses the mark. Motion at 15. Plaintiff does not allege that Stripe is selling the *data* it receives from Defendant to other third parties. Rather, Plaintiff alleges that Stripe unlawfully intercepts and records this data to build and market its "risk management services" to the merchants in its network. Compl. ¶ 40.

### C. Plaintiff Sufficiently Alleges That Stripe Violated the Third Prong of Section 631(a)

Defendant states that "[b]ecause Plaintiff fails to state a claim against Stripe under the first two prongs of Section 631(a), Plaintiff cannot state a theory of liability under the third prong of Section 631(a)." Motion at 16. However, Plaintiff sufficiently alleges that Stripe has violated the second prong of Section 631(a). As such, Plaintiff has satisfied the prerequisite for pleading a violation of the third prong of Section 631(a). *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiff must establish that the information at issue . . . was obtained through a violation of the first or second clauses.").

## II. PLAINTIFF SUFFICIENTLY ALLEGES HER SECTION 632 CLAIM

Defendant argues that Plaintiff's Section 632 claim fails because "Plaintiff does not allege that Stripe…intercepted a *conversation* between Plaintiff and Crumbl." Motion at 17. That is wrong.

Defendant's argument contradicts the plain text of Section 632 and relevant authority, which shows that a Section 632 claim requires a "confidential communication," not a "conversation." Section 632 provides:

> For the purposes of this section, "confidential communication" means ***any communication*** carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto . . . ."

Cal. Penal Code § 632(c) (emphasis added).

Beyond the plain language of the statute, the Ninth Circuit has consistently held plaintiffs adequately alleged "confidential communications," absent "conversations." *See In re Meta Pixel Tax,* 2024 WL 1251350, at *7 (holding plaintiff sufficiently alleged a Section 632 claim when

plaintiff alleged that the defendant used the Meta Pixel to harvest tax information from tax filing websites); *Doe v. FullStory, Inc.*, 2024 WL 188101, at *8 (N.D. Cal. Jan. 17, 2024) (holding that plaintiff's allegation that "TikTok designed and provided its Pixel to sites like Favor in order to intercept the information that she alleges TikTok received" adequately alleged a Section 632 claim); *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (concluding that plaintiffs established a "confidential communication" under Section 632 when they alleged that the Meta's Pixel code transmitted confidential health information from their medical providers' website); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1074 (N.D. Cal. 2021) (stating that plaintiff alleged a Section 632 claim when alleging the interception of the a user's private browsing session); *Griffith v. TikTok, Inc.*, 2023 WL 7107262, at *7 (C.D. Cal. Oct. 6, 2023) (holding that plaintiff sufficiently alleged collected data was "confidential communication").

Here, Plaintiff alleges that her sensitive information was intercepted and recorded, including her "IP address, [] geolocation," "card issuer information, payment method, credit card numbers, credit card cvc, credit card expiration date, and zip code." Compl. ¶¶ 43, 47. Plaintiff had an objectively reasonable expectation of privacy with respect to her PII and financial information. *Id*. ¶ 74. Courts have found comparable data to satisfy the "confidential communications" requirement under Section 632. *See In re Meta Pixel Tax,* 2024 WL 1251350, at *7 (recognizing tax filing information as a "confidential communication"); *Smith v. Google, LLC*, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024) (finding plaintiffs are not "alleging that their communications with another person were intercepted" and instead, they are alleging interception of their "sensitive financial information submitted to a tax preparation website," which are "confidential communications"); *Brown*, 525 F. Supp. 3d at 1074 (holding data intercepted from a user's private browsing sessions constitutes "confidential communications").

The authority relied upon by Defendant does not refute this. For example, In *Turner* the plaintiff alleged that the defendant Nuance's product "Gatekeeper" was monitoring customers' support calls with Chase Bank. *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *1 (N.D. Cal. May 28, 2024). "Gatekeeper" is an artificial intelligence voice recognition software which

"records a consumer's voice, creates a biometric voice print of the caller, and then examines that voiceprint to determine whether the caller is a potential fraudster in future calls, and—above all—to determine whether the caller is telling the truth when identifying themselves and attempting to gain access to their customer account." *Id.* (citation omitted). The *Turner* court evaluated whether the plaintiff sufficiently alleged an interception of a conversation by a third-party in this situation because the plaintiff alleged the interception of a telephone call. *Id.* at *9. Thus, the *Turner* court's consideration of interception of a conversation in the specific context in *Turner* does not override the definition or language of the statute, requiring a "confidential communication." While the remaining cases relied upon by Defendant concern phone conversations, they do not find as a matter of law that Section 632 only applies to oral conversations. *See Thomasson v. GC Services Ltd. P'ship*, 321 Fed. App'x. 557, 559 (9th Cir. 2008) (upholding the district court's grant of summary judgment for defendant on Section 632 claim because there were only two parties to the recorded telephone conversations, plaintiffs and employees of defendant); *Ribas v. Clark*, 696 P.2d 637, 642 (1985) (addressing eavesdropping under only Section 631); *Weiner v. ARS Nat. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012) (holding that the alleged telephone conversation was not a "confidential communication" because plaintiff "simply could not have had an objectively reasonable expectation of privacy based on these circumstances surrounding this short telephone call").

## III. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendant argues that Plaintiff fails to state a claim for invasion of privacy because she "lacked a reasonable expectation of privacy," and that the conduct at issue was not highly offensive. Motion at 18-20. Defendant is wrong on both counts.

To plead an invasion of privacy claim under the California Constitution, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *See* Motion at 17 (citing *Armstrong v. Allied Ins. Co.*, 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014)). Given the similarity of intrusion upon seclusion claims to California

invasion of privacy claims, the Ninth Circuit reframed the relevant inquiry as "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Plaintiff has satisfied both requirements.

**A. Plaintiff Had a Reasonable Expectation of Privacy**

Defendant erroneously contends "Plaintiff lacked a reasonable expectation of privacy as the information she alleges was collected is routinely collected for payments, fraud detection and fraud prevention purposes by essentially *any* website." Motion at 18. This information includes at least consumers' "IP address[es],… geolocation," "mouse movements and clicks, keystrokes, name of the consumer's bank or credit card issuer, whether the consumer had sufficient funds for a transaction, and whether the consumer later disputed a charge to their card." Compl. ¶¶ 37-38. Contending that consumers lack a reasonable expectation of privacy for this personal and financial information is at odds with California law.

"California has recognized [. . .] [an] interest[] in precluding the dissemination or misuse of sensitive and confidential information." *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp 3d 1204, 1232 (C.D. Cal. 2017); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015). This includes basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Courts also recognize "[i]ndividuals maintain the expectation that entities will not . . . collect such broad swaths of personal information absent consent." *In re Facebook*, 956 F.3d at 603 n.7.

Here, Plaintiff has alleged a reasonable expectation of privacy in the data Defendant assisted Stripe in intercepting. More specifically, Plaintiff alleged Stripe surreptitiously intercepted personally identifiable information, including at least her IP address and geolocation. Compl. ¶¶ 37–38. Additionally, when a customer checks out on Defendant's website, Stripe intercepts card issuer information, payment method, card number, CVC, expiration date, zip code, and consumer financial info (e.g., whether the consumer had sufficient funds, and whether the consumer disputed

the charge). *Id.* ¶¶ 38, 47. Consequently, Defendant assisted Stripe in collecting broad swaths of consumers sensitive and confidential information to build and monetize risk profiles of consumers to sell to merchants. *Id.* ¶¶ 3, 37–40. Because consumers, including Plaintiff, did not consent to Stripe's interception, did not even know Stripe was involved in the data collection, and certainly did not know or consent to a third-party's monetization of the personal and financial data, the collection violates social norms. *Id.* ¶¶ 45, 48–52. Courts have held this type of information to be subject to a reasonable expectation of privacy. *See Padron*, 2018 WL 2213462, at *14 (collecting cases).

Defendant tries (and fails) to string together cases to create a *per se* rule that "information to a payment processor . . . plainly falls within Plaintiff's reasonable expectations." Motion at 18 (citing *United States v. Hillaire*, 857 F.3d 128, 129–30 (1st Cir. 2017); *United States v. DE L'Isle*, 825 F.3d 426, 432–33 (8th Cir. 2016); *Pioneer Elecs. (USA) Inc. v. Super. Ct.*, 40 Cal. 4th 360, 372 (2007)). But Defendant's case law instead highlights the factually intensive nature of this inquiry. *E.g.*, *Hillaire*, 857 F.3d 128 at n.3 (explaining an officer's warrantless swiping of a credit card did not violate the 4th Amendment because "[t]he information disclosed in scanning . . . magnetic strips is limited to the same information that the exterior of the card discloses"); *DE L'Isle*, 825 F.3d at 432–33 (same); *Pioneer Elecs.*, 40 Cal. 4th at 372 (finding a reduced expectation of privacy for the release of consumer contact info the court's reasoning turned on (1) context surrounding the suit, and (2) the voluntary nature of the claims). Here, Defendant assisted a third-party in obtaining detailed consumer information to build consumer profiles for profit. Compl. ¶ 51; *Silver v. Stripe Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (denying defendant's motion to dismiss a California invasion of privacy claim because the plaintiffs alleged a reasonable expectation of privacy where defendant "compiled and disseminated plaintiffs' sensitive data").

Defendant further argues "the additional data [i.e. geolocation and IP addresses]…Stripe collected…does not fall within users' reasonable expectation of privacy." Motion at 18 (citing *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020); *In re Google Location Hist. Litig.*,

428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). While IP addresses and geolocation data *alone* may be insufficient to create a reasonable expectation of privacy, Plaintiff does not allege that only IP addresses and geolocation data was intercepted. Defendant fails to address the sensitivity and volume of the data actually collected, and whether the manner it was collected exceeded consumers' reasonable expectation of privacy. Given the volume of data collected (i.e., IP addresses and geolocation data *in addition to* consumers names, email addresses, delivery addresses, mouse movements and clicks, keystrokes, bank/card issuer, sufficiency of funds, and previous transaction disputes), the nature of its collection (via a wiretap Defendant hid in its website), and the scope of its use (building detailed consumer profiles to monetize), Plaintiff and Class Members sufficiently alleged a reasonable expectation of privacy under California law. Compl. ¶¶ 37–39, 50–52, 78–80; *Padron*, 2018 WL 2213462, at *14; *Silver*, 2021 WL 3191752, at *6.

Defendant also mischaracterizes Stripe as merely a payment processing provider, brazenly asserting it would be "unreasonable to assume [Defendant] would not rely on a payment processing provider." Motion at 19. Defendant's statement is wholly unsupported and insufficient to serve as a basis to dismiss Plaintiff's claims. Furthermore, the surreptitious interceptions at issue go beyond the mere processing of payments, as Stripe indefinitely stores the information gathered and markets it to other merchants. Compl. ¶¶ 50–51. Given the sensitive nature of the data collected and the deceitful way it was collected (i.e., via wiretapping), the collection intrudes on consumers' reasonable expectation of privacy, such that Plaintiff alleged sufficient facts necessary to survive a motion to dismiss. *In re Facebook*, 956 F.3d at 603.

**B. Defendant Committed a Serious Breach of Privacy**

Defendant claims "Plaintiff has not and cannot allege that the routine data collection necessary to process a payment transaction was highly offensive . . ." Motion at 20. However, Defendant's claims raise a question of fact that should not be resolved on the pleadings. Indeed, both this Court and the Ninth Circuit recognize "whether a conduct was highly offensive cannot be resolved at the pleading stage." *Silver*, 2021 WL 3191752, at *5 (citations omitted); *In re Google*

*Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (holding "[w]hether Google's collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact."); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *83 (N.D. Cal. May 21, 2021) ("Nor is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage')(citation omitted); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *see also Revitch*, 2019 WL 5485330, at *3 (denying motion to dismiss because whether conduct is offensive is a factual question).

At issue in the present action is how Defendant assisted Stripe in the "surreptitious" acquisition of personal information. As Judge Tigar explained in *Opperman v. Path*, secretly acquiring an individual's personal information—as Defendant did here when it assisted Stripe with placing a wiretap on Plaintiff's and Class Members' communications—is far from "routine commercial behavior." *Opperman*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) (concluding the offensiveness of the conduct in question was an issue of fact "best left for a jury"). In doing so, Judge Tigar also declined to follow *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), and *In re Google, Inc. Privacy Policy Litigation*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014), explaining the mechanical application of *Folgelstrom* was misplaced. *Compare Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016) (explaining "offensiveness inquiry is fact-specific, and this Court has already distinguished *Folgelstrom* because the data at issue here is "more private than a person's mailing address" and this kind of intrusion is not "routine commercial behavior."), *with Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (mechanically applying *Folgestrom* after the plaintiff failed to allege deanonymization of collected data); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008) (finding there was no egregious breach because identity theft traced back to the theft of computers from a third party recruiter); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1140–42 (E.D. Cal. 2021)

(mechanically applying *Folgestrom* because the plaintiff did "not allege [the defendants] used his information for any purpose at all). Similarly, other courts have determined that "[t]he question is not necessarily whether [the plaintiff] maintained a reasonable expectation of privacy in the information in and of itself. Rather, . . . whether the data itself is sensitive and whether the manner it was collected . . . violates social norms." *In re Facebook*, 956 F.3d at 603.

Defendant's collection, recording, and monetization of consumers' protected personal and financial information extends far beyond any expectation of consumers. Additionally, because Plaintiff alleged a surreptitious acquisition of information via a non-routine business practice (i.e. wiretapping), this Court should adopt the *Opperman* Court's reasoning. Compl. ¶¶ 41–53.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff seeks leave to amend the Complaint.

Dated: July 12, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *\/s/ Sarah N. Westcot*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
Stephen A. Beck (*pro hac vice* forthcoming)
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiff*